JOYE v. SOUTH CAROLINA MUTUAL INS. CO.

1. INSURANCE.—A MUTUAL INS. Co., where by-laws are made a part of the policy, and which provides that the policy is vitiated by failure to pay an assessment within thirty days after notice, is not liable on a policy on which assessments are past due.

2. IBID.—WAIVER.—ADJUSTMENT OF A LOSS by insurance company is not waiver of right to deny liability, where the adjustment papers state that such adjustment shall not be considered such waiver.

3. IBID.—IBID—Promise by letter of president of insurance company to pay a loss is not waiver of denial of liability, when it is followed by another denying liability, and where no change of status of insured is shown to have arisen from such promise.

Before GARY, J., Sumter, March, 1898.    Affirmed.

Action by Lina E. Joye *v.* South Carolina Mutual Ins. Co. on policy of fire insurance to recover value of stock of goods. The fire occurred on March 13th, 1897.    Immediately after the fire the agent of plaintiff obtained a money order for amount of assessments past due, dated March 12th, and for-warded same to company.    In this letter nothing was said about the loss. ˙ Notice of loss reached company a few days later, sent by plaintiff's agent and others.    Proofs of loss were made upon 19th of March.    The following letters refer to the past due assessments:

"Greenville, S. C., April 22, 1897.    Mr. L. E. Joye, Bishopville, S. C.    Dear Sir: The directors have decided to pay your loss, although they are not bound legally to pay it. Your policy at the time was suspended, and had been for two and a half months.    They ordered an assessment made to pay it, but reserved the right to decide all similar cases—this case not to establish a precedent.    Yours truly, I. F. Hunt, President."

"Greenville, S. C., June 23, 1897.    Mr. L. E. Joye, Bishopville, S. C.    Dear Sir: At a meeting of the directors of this company, held on the 21st inst., your claim, with the circumstances attending it, was submitted to them.    Upon the advice of the attorney of company, they decided they

could not legally recognize your claim. Under the circumstance, the money you sent March 12th is hereby returned. Yours truly, I. F. Hunt, President."

When the action was commenced, the defendant was known and sued as "The Mutual Insurance Company of Greenville, S. C.," but by an act of the General Assembly its name was changed to "South Carolina Mutual Insurance Company;" and when the case was called for trial, it was ordered that the action be carried on under the latter name.

From order of nonsuit, plaintiff appeals.

*Messrs. Purdy & Reynolds,* for appellant, cite: *Waiver is question of fact for jury:* 43 S. C., 26; 29 S. C., 560; 46 S. C., 79; 51 S. C., 180, 540. *The proposition of defendant that no officer or agent can waive the provision of forfeiture in these by-laws is not correct:* 45 S. C., 381; 3 Kan., 385; 50 Mich., 204; 45 Hem., 109; 69 Wis., 224; 13 Fed. R., 84; 146 Mass., 248, 286; 17 Fed. R., 214; 29 S. C., 560; 45 N. E., 1062.

*Messrs. Jos. A. McCullough* and *Haynsworth & Haynsworth,* contra. The former cites: *No officer or agent can waive the provisions of the charter and by-laws:* 9 Allen, 329; 1 Beas., 333; 97 Ind., 299; 65 N. Y., 6; 31 Minn., 17; 7 Watts & S., 348; 68 Ind., 354; 14 Gray, 80; 42 N. J. Eq., 459; 6 Gray, 169; 66 N. Y., 276; 37 N. E., 1105; 152 Mass., 272.

March 14, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. After the plaintiff had offered her testimony, the defendant moved the Court to grant a nonsuit. The Circuit Judge granted the motion upon the ground that the testimony showed that the contract sued on at the time of the loss was suspended for non-payment of assessments, and furnished no cause of action against the defendant. The plaintiff now appeals from such order of

nonsuit on the following grounds, to wit: 1. In that such order deprived the plaintiffs of the right to show waiver or estoppel on the part of the defendant to make the objection that the policy sued on had been suspended for non-payment of assessments.   2. In that the plaintiff was by such order denied the right to show *waiver* or estoppel on the part of the defendant of its right to insist on claiming either that the policy was suspended or forfeited; and the waiver being a question of fact for the jury, there was error in not allowing the plaintiff to show waiver if she could.   3. In that it appeared that there was not only testimony tending to show waiver, but that there were acts of the defendant showing a complete *waiver* of suspension and forfeiture such as: (a) adjusting the loss; (b) promising on April 22, 1897, by letter, to pay the loss—all with full knowledge of the alleged suspension; and these were questions of fact which should have been submitted to the jury.

1. The cause of action set out by plaintiff was the duty owed to her by the defendant—a mutual insurance company —to pay a policy issued by said company to protect a stock of goods owned by the plaintiff from fire to the amount of $1,000, which said stock of goods was destroyed by fire on the night of the 13th March, 1897, and which loss, after demand and proof of loss, defendant refused to pay.   We have examined the case with great care; for while a contract for insurance is nothing but a contract between parties in its last analysis, still it involves very nice care in giving a proper construction, because of stipulations outside of the paper embodying in general terms such contract.   Here, for instance, the policy of the company makes reference to by-laws, and the application of the insured for such insurance, as a part of the contract of insurance, although such by-laws and application are not recited in terms in the policy; hence, in order to determine what the contract between the parties actually may be, reference of necessity must be had to those papers.   As the title given by law to the defendant, it is what is known as a mutual insurance

company to distinguish it from what is known as the old line or stock insurance companies, of course, one of the features of the former is that persons whose lives or property is insured by it are members of the insurance company, with a liability to contribute for membership therein, and a plan of assessments upon the members to cover expenses and losses. Now what is the particular contract here in question. It is that the plaintiff agreed in her application for insurance to be bound by the by-laws which the defendant was by its charter authorized to prescribe. The very policy issued sets out: "That the amount of loss to be determined as per charter and by-laws of this company." By the written application of the plaintiff for membership and insurance, she stipulates: "It is agreed that there is no contract of insurance until the application is accepted and the policy or certificate is issued, subject to the conditions and stipulations therein contained." The second section of the charter of the company (see act 21 Stat., 1120, approved 22d December, 1894,) is in these words: "* * * such insurance to be against loss by fire, wind, or lightning, upon such terms, * * * as may be fixed by the by-laws of said corporation." Section 7 of the by-laws makes it the duty of the secretary to notify policy holders of assessments. Section 11 provides that losses shall be paid by *pro rata* assessments. Section 14 provides that property insured shall be liable to assessments until the policy is cancelled. Section 19 is in these words: "All assessments must be paid within thirty days after written notice is mailed. If not paid, the policy shall be suspended, and be liable to assessment until cancelled. *Suspended policies may be reinstated without extra cost by assured paying back assessments, provided the property be in the same condition as when suspended.*" Now in the case at bar, the plaintiff herself introduced testimony showing that two assessments were unpaid, to wit: one issued in December, 1896, and one issued on 27th January, 1897; that the secretary of the association notified her that her policy was suspended for failure to pay assessments on the 27th day of February,

1897. That her property was destroyed by fire on the 13th March, 1897, and that she did not forward the money for the assessments past due until after the fire. So that by her own testimony she showed that she had violated her contract, which violation by the terms of said contract vitiated her policy. But she attempted to show a waiver by reason of her loss having been adjusted by an officer of the company—overlooking the fact that he had stipulated in her proofs of loss that "the furnishing of this blank to assured, or making up proofs by adjuster for company, is not to be considered as a waiver of any rights of the company." Again, it was suggested that the president of the company, by his letter to her dated April 22, 1897, had stated her claim would be paid, and thereby there was a waiver of the right to regard her policy as vitiated by her own act of failing to pay the assessments before the loss by fire. It is quite true such a letter was written, but it was followed by one some time afterwards denying all liability. There was no proof that any change in the condition of plaintiff had been the result of the first letter of the president. The result of our reflections upon the matters set out in the brief covered by the three exceptions is that we are unable to see any reversible error in the order for nonsuit.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.