14253

BROWN v. FARMERS MUTUAL FIRE INS. ASS'N OF FAIR-
FIELD COUNTY, S. C., *ET AL.*

(184 S. E., 670)

*Messrs. Douglas & Douglas,* for appellant,

*Messrs. McDonald, Macauley & McDonald,* for respondent,

March 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The amended complaint sets forth that in August, 1920, Eph A. Brown and Mary Brown, his wife, procured from the appellant a policy by which their dwelling house was insured against loss by fire in the sum of $300.00; loss, if any, payable to Joseph Wylie & Co., a corporation, as its interest might appear. It is further alleged that the insured, being still indebted to Joseph Wylie & Co. in July, 1923, they conveyed the insured premises to it, and simultaneously Wylie & Co. entered into an agreement with Eph and Mary Brown to reconvey the premises to them. The complaint further states the death of Eph Brown in July, 1931, and the appointment of Mary Brown to be the administratrix of his estate. It is further alleged that the insured property was destroyed by fire on the 7th day of November, 1932, and the defendant association was duly notified of the loss, but denied and still denies, liability on the policy; that the premiums on the policy were at all times duly paid by Eph and Mary Brown, or Joseph Wylie & Co.; that in pursuance of the agreement to reconvey the premises, Eph and Mary Brown remained in continuous possession of the premises and made partial payments on the debt, and since the death of Eph Brown, the plaintiff, Mary Brown, and the other heirs at law of Eph Brown, remained, and are now, in possession of the property.

The answer admits the formal allegations of the complaint, and the issuance of the policy in the year 1920; it

alleges that the policy contained a provision that if the title to, or ownership of, the property should be changed, the obligation of the insured and of the association should at once cease; that on the 25th day of August, 1923, Eph Brown and Mary Brown by their deed conveyed the insured premises in fee simple to Joseph Wylie & Co., without the knowledge and consent of the association.

For further answer: That the policy contained a provision that if the dwelling thereby insured should remain vacant for more than 30 days the liability of the association should be suspended, and that the insured dwelling was vacated at least 30 days before its destruction by fire.

Joseph Wylie & Co. were made parties to the suit, but did not answer the complaint.

The case was tried by Judge Mann and a jury, and resulted in a verdict for the plaintiff. The association alone appeals. At the conclusion of the testimony, the association made a motion for a directed verdict on the grounds that: (1) There has been a change of interest, ownership, in the property. (2) That the proof shows that this dwelling had been vacated as a dwelling house, or a place of abode, and under the terms of the policy there could be no recovery. The motion was refused; his Honor holding that before the association could claim a forfeiture on the grounds assigned it must have returned, or tendered a return of, the assessments paid by the assured. It is admitted that this was not done.

In the brief for appellant, counsel state the "questions involved" to be:

(1) Error to refuse the motion for directed verdict.

(2) Error to hold that the assessments paid should have been returned, or tendered, before action brought.

(3) Error to hold that a forfeiture would not avail the defendant if incurred through the ignorance of the insured and they acted without intent to violate the terms of the policy, and without intent to do wrong or act fraudulently.

We shall address our attention to these "questions" and subsidiary questions without taking up the specific exceptions.

It must be admitted that Eph and Mary Brown by ██ an instrument in writing, in form a deed in fee simple, conveyed the insured property to Joseph Wylie & Co. If nothing else appeared in the case, the association was entitled to have the Court direct a verdict in its favor, because a condition of the policy expressly provides that a change in interest, or ownership, of the insured property shall cause the contract of insurance instantly to end. But another question arises in connection with this issue which we shall presently consider.

We think there can be deduced from the evidence only one reasonable inference; namely, that the association had no notice of the deed to Joseph Wylie & Co. until this action was brought. It must then follow that it was not called upon nor bound to return or tender return of the premiums to the insured. It is true that the deed of conveyance was of record in the Clerk's office. In other words, the plaintiff contends that the failure to return or tender the premiums waives the forfeiture provided for in the policy. The association contends that it had no actual notice of the conveyance of title, and that the record of the deed was not constructive notice to it. We think it is correct in these views.

In *Pearlstine v. Westchester Fire Ins. Co.*, 70 S. C., 75, 82, 49 S. E., 4, 6, it is said: "The defendant next submits there was error in refusing to charge that a failure to return the premium after the fire does not amount to waiver of any of the conditions of the policy. Good faith would seem to require the insurer to cancel the policy and return the unearned premium, if, before the fire, while the policy was current, it had notice that the insured had so violated the policy that under its terms he would recover nothing in case of loss. In such case the insurer would allow the insured to hold the policy and rely upon its provisions, while at the same time it retained the consideration for the unexpired

term, knowing the policy to be valueless. For this reason, the retention before the fire of the unearned premium for the unexpired term, with notice that the policy had become void under its terms, may be held evidence of waiver. It is held in *Schroeder v. Springfield Fire & Marine Ins. Co.*, 51 S. C., 180, 28 S. E., 371, that if an insurance company actually received the premium after the fire, knowing that other insurance had been taken in violation of the policy, this would be evidence of its election to waive the violation. Where, however, the premium is paid, and in consideration of it the company contemporaneously issues its policy, which is a contract to insure on certain conditions therein mentioned, and the insured violates those conditions in a material particular without the knowledge of the insurer, in case of loss the insurer is not bound to return the consideration of the policy before standing upon its terms. The consideration has been paid, not for an absolute promise, but for a promise of the insurer to hold itself liable for loss on certain conditions. The company does not fail in its promise by insisting on its conditions. Not having broken its contract, it has a right to retain the consideration. The insured has received all he contracted and paid for—conditional insurance—and he has no right to demand a return of the price paid from the insurer, on pain of liability for unconditional insurance. After the loss occurs as to the property destroyed, the policy is no longer current, but has become matured by reason of the fire, and no question of good faith is involved in retaining the premium, because the rights of the parties are then fixed. Upon these considerations rest *Norris v. Hartford Fire Ins. Co.*, 55 S. C., 450, 33 S. E., 566, 74 Am. St. Rep., 765, and *Young v. St. Paul Fire & Marine Ins. Co.*, 68 S. C., 387, 47 S. E., 681."

That the record of the deed from Eph and Mary Brown to Joseph Wylie & Co. was not such notice to the association as put it under obligation to return, or tender the return of, the premiums (or assessments) is shown by the opinion of this Court in the case of *Jeffords v. Tokio Marine & Fire*

*Ins. Co.*, 123 S. C., 467, 117 S. E., 79. At page 471 of the opinion in 123 S. C., at page 81 of 117 S. E., the Court quoted from 14 R. C. L., 1172, the following: "In general it may be said that the knowledge of an insurer which will form the basis for a waiver must be actual notice either to the insurer or its authorized agents, and not mere constructive notice. Accordingly a notice deposited in the mail is ineffective unless received and the constructive notice imparted by the record of instruments is insufficient."

To the same effect is 26 C. J., 296.

The same opinion says:

"Mr. Freeman in his monographic note exhaustively reviews this question in 107 Am. St. Rep., 108. Under the head 'Constructive Notice to Insurers,' he says:

" 'The statutes providing for the registration in some public office of instruments affecting the title to real property usually, if not universally, provide that such registration shall impute notice of the contents of the writing so registered to subsequent purchasers and incumbrancers. Insurers are neither, and hence are not, when issuing policies, chargeable with notice of such registered instruments, and may therefore seek and find protection in conditions in such policies exempting insurers from liability in case the condtion of the title to the property insured has not been truly disclosed, or incumbrances existed which have not been noted on the policy, though the condition of such title or the existence of such incumbrances appears on the public records, and must have been disclosed had any examination been made thereof.' "

The acceptance by Joseph Wylie & Co. of the deed from Eph and Mary Brown, if it was accompanied with an agreement to reconvey the property upon payment of the debt, was in effect to make the deed, though one in fee in form, in reality a mortgage. In such case the relation of the association to the property would not be changed because when they issued the policy they knew that Joseph Wylie & Co. had a mortgage on it.

The third question suggested for consideration by the appellant involves practically all the other exceptions set up by the appellant, which are almost wholly devoted to alleged errors of the charge.

A careful review of the whole charge convinces one that the presiding Judge was seeking to impress upon the jury the proposition that if the deed from Eph and Mary Brown to Joseph Wylie & Co., which is in form a deed, was in effect and equity a mortgage, then the policy was not forfeited because the interest and ownership in the property was not changed. It may be that more was said than was necessary, and that there may be taken from the charge isolated sentences or statements, which are open to criticism. But the fundamental truth remains that if there be any relevant and competent evidence applicable to the proposition so set out in his charge, it was his duty to submit the question to the jury.

If there was such evidence there was no error in refusing the motion for directed verdict on this ground.

And if it was error to hold that the association should have returned, or tendered return, of the assessments before action brought, the error was harmless, if his Honor was right in submitting to the jury the issue whether the deed was an absolute deed in fee simple, or in effect a mortgage, and the finding of the jury thereabout was correct.

The principle of law applicable to cases of this nature is thus stated by Mr. Justice McIver in *Brownlee v. Martin,* 21 S. C., 392, 400: "The law looks with jealousy and suspicion upon all dealings between the mortgagee and the mortgagor, from the supposed influence which the former has over the latter. If therefore a deed, absolute on its face, is shown (as it may be shown by parol evidence) to have been executed merely as a security for a debt, and not intended as an absolute transfer of title, the terms of such agreement or understanding entered into at the time of the execution of the deed are not merged by any subsequent

written agreement entered into by the parties. If it is once shown that the deed, though absolute on its face, was, at the time it was executed, only intended as a security for a debt, it will operate only as a mortgage, and it cannot be converted by any subsequent written agreement into an absolute conveyance, unless such subsequent agreement is based upon a sufficient consideration, and is shown to have been fairly made, without undue influence by the creditor; and the burden of showing this is upon the mortgagee. In other words, it must amount to a sale of the equity of redemption, fairly made, upon sufficient consideration." (Citing authorities.)

This question is fully considered and determined in the case of *Stackhouse v. Stanton* (S. C.), 184 S. E., 105.

What does the record show which will help to elucidate the question; was this a deed absolute or a mortgage in equity? Was it the duty of the Court to submit that question to the jury?

The appellant lays stress upon the fact that the deed from Eph and Mary Brown to Joseph Wylie & Co. was executed in August, 1923, and the bond for title from Joseph Wylie & Co. to Eph Brown was dated December 1, 1923. But there was other evidence relative to this issue. To begin with the Browns continued to occupy the premises till Eph was killed in 1931, and Mary testifies that she continued to occupy it till it was burned in 1932. They paid the premiums or assessments on the property from 1920 until the house was burned in 1932.

Mary Brown was asked: "Did you or not, either you or Eph, or both of you have any understanding at the time this deed was made that if you paid the debt, you could keep the land?" "Yes, sir."

Again she was asked: "Mary was there any understanding between you and Eph and Wylie and Company that if you paid this debt you could get this land back?" "Yes, sir."

There is other testimony upon this subject in the record.

There was no error in submitting to the jury .the question whether the deed from Eph and Mary Brown to Joseph Wylie & Co. was a deed absolute, or in effect a mortgage. The finding of the jury thereabout is sustained by the evidence.

And the same must be said in relation to the issue made by appellant that the insured property had become vacant for more than thirty days before it was burned, and that this violated the terms of the policy and barred a recovery on the policy.

Eph Brown was assassinated in this house in the summer of 1931. Mary for a time thereafter stayed at her daughter's at night, within a stone's throw of the insured house. On direct examination she was asked: "Mary, after Eph was killed did you stay in that house at night?" "Not at night; I was over there to my daughter and stayed, but I was there every day and gathered my crop and worked it out and then gathered the crop. I never stayed there at night." "Well, did you move all of your stuff out of the house or not?" "No, sir." * * * "I moved out one bed and a little safe my granddaughter had. * * *" "Do you recall what was in the house when it was burned?" "I had a big safe in there, two beds, a bureau and dining room table, and bowl and pitcher and about 100 pictures hanging around the walls and all my clothes and my little girl's clothes. * * * My trunk was there and all my stuff in it."

On cross-examination she was asked:

"Q. Mary, you didn't intend to go back to your house, did you? A. Not to live or stay.

"Q. When you moved away from there you intended to abandon that house, didn't you? A. No, sir. I didn't intend to abandon it.

"Q. I mean you didn't intend to live there? A. No, sir. Not at night.

"Q. You didn't intend to live there as a home any more? A. I was expecting to live there as a home again, but I was not expecting to live there by myself. * * *

"Q. I asked you why you got away from there—because your husband was killed there? A. Because he was killed there and I was afraid to stay there by myself."

There was testimony on behalf of defendant designed to contradict this. In our opinion an issue was made which it was the duty of the jury to determine; namely, whether the insured building was vacant within the meaning of the terms of the policy. We are satisfied with the finding of the jury thereabout.

All exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.